[Cite as *State v. Kline*, 2012-Ohio-4345.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HENRY COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                 CASE NO. 7-12-03

    v.

JOHN A. KLINE, JR.,                    O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Henry County Common Pleas Court
Trial Court No. 09 CR 38

**Judgment Affirmed**

Date of Decision: September 24, 2012

APPEARANCES:

    *John P. Goldenetz* **for Appellant**

    *John H. Hanna* **for Appellee**

Case No. 7-12-03

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant John A. Kline ("Kline") brings this appeal from the judgment of the court of Common Pleas of Henry County finding him guilty of one count of felonious assault with a gun specification. For the reasons set forth below, the judgment is affirmed.

{¶2} On August 11, 2009, Kline and Eric Allenback ("Allenback") went to the home of Holli Balazs ("Balazs"). Balazs was a prior girlfriend of Kline and the mother of his son. Upon entering the home, Kline and Allenback encountered Jason Westfall ("Westfall"), who was dating Balazs at that time. Either Kline or Allenback used a taser on Westfall to incapacitate him. Both Kline and Allenback proceeded to physically assault Westfall over an approximate two hour period. Balazs retrieved a handgun in an attempt to stop the attack, only to have Kline grab it from her. He then struck Westfall in the head with the weapon. After beating Westfall into a state of unconsciousness, Kline and Allenback placed Westfall, Balazs, and the child, into a car and drove him to Toledo, Ohio. Kline and Allenback dumped Westfall from the car and left him lying in the street in a neighborhood in Toledo. They then left with Balazs and the child. Westfall was able to get to a house and emergency services were called. Westfall was taken to a nearby hospital where he remained for three days due to his injuries.

{¶3} On August 14, 2009, the Henry County Grand Jury indicted Kline on five separate counts: 1) aggravated burglary in violation of R.C. 2911.11(A)(1), a felony of the first degree; 2) kidnapping in violation of R.C. 2905.01(A)(2)(C)(1), a felony of the first degree; 3) kidnapping in violation of R.C. 2905.01(A)(2)(C)(1), a felony of the second degree; 4) kidnapping in violation of R.C. 2905.01(A)(2)(C)(1), a felony of the second degree; and 5) felonious assault in violation of R.C. 2903.11(A)(1), a felony of the second degree. All of the counts included a firearm specification. Kline entered a plea of not guilty to all counts.

{¶4} On May 10, 2010, Kline entered a plea of no contest to count five of the indictment. In exchange, the State agreed to dismiss the remaining four counts of the indictment. The trial court accepted the plea and entered a judgment of guilty to the felonious assault and the gun specification as to count five of the indictment. A sentencing date was set and a pre-sentence investigation ("PSI") was ordered.

{¶5} On June 9, 2010, the sentencing hearing was held. The trial court ordered Kline to serve the maximum sentence of eight years in prison for the felonious assault and three years in prison on the gun specification. The sentence for the gun specification was required to be served consecutively to the sentence for the felonious assault for a total prison term of eleven years. In addition, the

trial court ordered restitution in the amount of $16,377.77 to be paid by Kline to Westfall. However, the trial court also ordered that additional restitution could be ordered and that the restitution was joint and several with Allenback. Kline appealed from this judgment. However, on December 27, 2010, this court dismissed the appeal for lack of a final, appealable order.[1] The matter was remanded to the trial court for entry of a final, appealable order. On January 3, 2012, Kline filed a motion for the trial court to reconsider the amount of restitution and allocate damages between the co-defendants. The trial court denied the motion on January 13, 2012, claiming that it did not retain jurisdiction to modify the previous order. The trial court then limited the amount of restitution to the previously ordered amount of $16,377.77. Kline appeals from these judgments and raises the following assignments of error.

## First Assignment of Error

**The maximum sentence imposed on [Kline] was not supported by the record.**

## Second Assignment of Error

**The trial court erred in ordering restitution which was not supported by the record.**

---

[1] The amount of restitution cannot be left open for future determination.

**Third Assignment of Error**

**The trial court erred in allowing inflammatory evidence at sentencing without a finding or an agreement that its admission was part of a plea bargain.**

**Fourth Assignment of Error**

**The trial court erred in refusing to hold an evidentiary hearing to allocate responsibility for damages between the co-offenders after announcing that the co-offenders would be jointly and severally liable.**

In the interests of clarity, the assignments of error will be addressed out of order.

{¶6} The first assignment of error alleges that the maximum sentence was not supported by the record. Kline argues that the record does not support the maximum sentence because there were mitigating factors.

> **When determining the appropriate sentence, the trial court may consider charges and their supporting facts that are dismissed pursuant to a plea agreement when the defendant is entering a plea to reduced charges. *State v. Bowser*, 186 Ohio App.3d 162, 2010-Ohio-951, 926 N.E.2d 714. "[T]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, ¶37, 846 N.E.2d 1.**

*State v. Triggs*, 3d Dist. No. 12-10-03, 2010-Ohio-4178, ¶3.

{¶7} A review of the record in this case shows that although Kline argues that he was not the primary aggressor, the victim's reports contradict Kline's claims. According to the information in the PSI, Kline was actively engaged in

beating the defendant and repeatedly threatened to kill Westfall. Westfall also reported that Kline wrapped him in a sheet and blanket and then placed him into the vehicle where he was repeatedly assaulted until he was thrown out of the vehicle. This version of what happened was supported by the report of Balazs. In addition, the State presented copies of numerous texts from Kline to Balazs in which he threatened to kill Westfall. Given this information, the trial court could properly conclude that Kline's version of events, that things just "spiraled out of control" and that he had sought medical treatment for Westfall, was not credible. Based upon the information before it, the trial court could reasonably conclude that this was one of the worst forms of the offense and could sentence Kline to a maximum sentence. Since he was sentenced prior to the effective date of H.B. 86, no findings were required. The sentence imposed was within the statutory range and there are no allegations that the trial court did not consider the statutory factors set forth in R.C. 2929.11 and R.C. 2929.12. Thus, the first assignment of error is overruled.

{¶8} In the third assignment of error, Kline claims that the trial court erred in viewing inflammatory images during sentencing without the agreement of Kline. At a sentencing hearing, "the offender, the prosecuting attorney, the victim or the victim's representative in accordance with [R.C. 2953.08] * * * may present information relevant to the imposition of the sentence in the case." R.C.

Case No. 7-12-03

2929.19(A). Kline argues that the photos of Westfall's injury were inflammatory and caused the trial court to impose the maximum sentence. This court need not determine whether the photos were in fact inflammatory. As a matter of law, a reviewing court presumes that a judge will consider only relevant, material, and competent evidence. *State v. Post*, 32 Ohio St.3d 380, 384 (1987). Thus absent evidence that the trial court improperly considered any improper evidence, the judgment will not be reversed. *State v. Simko*, 71 Ohio St.3d 483, 491 (1994).

{¶9} A review of the record finds that the trial court stated the basis for the sentence imposed.

> **The Court: The rendition of the history of these two men, the victim and the defendant, with this mutual girlfriend, the court could care less about. This isn't' high school. When persons can't control their passions, there's a place those persons need to be and it's prison. Now the court has listened to the defendant's version of some of the facts that occurred that night and is aware, according to that version, some of the facts may be in dispute. There are some facts that are not in dispute. This defendant came to where this victim was that night; uninvited. Weapons, multiple weapons were involved in the commission of this crime. The extent of the serious physical and emotional injuries caused to the victim in this case are (sic) not in dispute. The defendant's criminal record is not in dispute. His record of assault and battery and violation of a protection order in the state of Nebraska isn't in dispute. His violating his probation on that offense isn't in dispute.**
>
> **The Court finds the defendant's version of self-defense which was the catalyst for this offense, to not be credible. The Court finds the defendant's version of trying to seek out medical aid for this victim, the court finds not credible. In one of the more preposterous statements possibly I've ever heard in a criminal**

-7-

sentencing is the statement the "defendant didn't intentionally hurt [Westfall]." One cannot consider the serious extent of his injuries and come to that conclusion.

The factors the court is to consider in every sentence are the seriousness and recidivism factors and I want to review those as they apply to the facts in this case. There is no question this victim suffered serious physical and psychological harm and economic harm to the extent that he is not able to work. His victim impact statement graphically describes that he is still suffering from emotional results of this offense in terms of his fear when anyone comes to his door. He rather simply and basically describes the fear that he experiences and the emotional impact this crime has had on him. Three days in ICU, the photographs introduced today at the sentencing demonstrate the very serious nature of the injuries that were inflicted here. The relationship to the extent the girlfriend was involved mutually between them --- the relationship with the victim facilitated this offense. Those are the seriousness factors that are present in this case.

In terms of recidivism, the court must consider the fact that he failed previously on probation in the state of Nebraska. And as I recall, there was some evidence of drinking or alcohol abuse that night by the defendant.

The principle offense of felonious assault, being a second degree felony, it carries a presumption of prison and certainly prison is required in this case in addition to the mandatory three years on the gun specification. The Court finds that to impose the shortest prison term for the principle offense would demean the seriousness of this offense. The very serious nature of the injuries inflicted, the nature of the crime committed, a minor child being present during the assault, the use of weapons against this victim – multiple weapons, taser, knife, gun; the continuous course of conduct of this continual beating and then leaving the victim to fend for himself, combined with the defendant's prior record, all are reasons which justify the imposition of the longest prison term to be imposed in this case.

**The Court finds this offender committed the worst form of this offense.**

Tr. 51-53. Although the trial court considered the photographs in determining the seriousness of Westfall's injuries, the trial court did not clearly give them excess weight. The trial court also pointed to the fact that Westfall was in ICU for three days following the assault. The trial court could reasonably infer from this fact that the injuries were serious. Additionally, Westfall gave a statement about the severity of the injuries. Thus, there is no evidence that even if the photographs were inflammatory, that they affected the sentence. The other evidence was overwhelming and uncontradicted that the injuries were severe. Without a showing of prejudice, there is no error. The third assignment of error is overruled.

{¶10} In the second and fourth assignments of error, Kline challenges the order of restitution. The second assignment of error claims that the amount of restitution is not supported by the record. A trial court has the authority to order restitution as part of the sentence. R.C. 2929.18(A). The amount of restitution from the defendant to the victim shall be based on the victim's economic loss. R.C. 2929.18(A)(1). "[T]he court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and

proximate result of the commission of the offense." *Id.* A review of the record in this case indicates that Westfall stated in his victim impact statement that his medical bills at the time of sentencing were $16,377.77. Kline did not object to this amount at the hearing. Since this amount was that recommended by the victim and represented the economic loss suffered by the victim, the trial court did not err in ordering Kline to pay $16,377.77 in restitution to Westfall. The second assignment of error is overruled.

{¶11} In the fourth assignment of error, Kline alleges that the trial court erred by not apportioning the restitution between the co-defendants. This court notes that although the court denied the motion to apportion the restitution based upon a lack of jurisdiction, the trial court was incorrect. When this court dismissed the prior appeal due to lack of a final, appealable order, that meant that the trial court still had the jurisdiction to consider the amount of restitution. The trial court's jurisdiction does not terminate until a final, appealable order is issued. However, this does not affect the current appeal.

{¶12} Here, Kline argues that the trial court should have apportioned the amount of restitution between the two co-defendants instead of ordering that his restitution was joint and several. However, Kline presents no legal authority for his claim that the trial court had a duty to apportion the damages. The statute allowing the imposition of restitution does not require apportionment. See R.C.

2929.18. Instead, as discussed above, it allows for the trial court to order complete restitution orders against any defendant. The fourth assignment of error is overruled.

{¶13} Having found no error prejudicial to the defendant, the judgment of the Court of Common Pleas of Henry County is affirmed.

*Judgment Affirmed*

**SHAW, P.J. and PRESTON, J., concur.**

**/jlr**